# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LINDA GAUTREAUX | CIVIL ACTION |
| VERSUS | NO: 08-3643 |
| DON C. GARDNER, ET AL | SECTION: "S" (1) |

## ORDER AND REASONS

The Motion to Dismiss Plaintiff's 4th Amendment Unreasonable Seizure Claims based on Defendants' Qualified Immunity and "Reasonableness of Seizure" (Doc. # 15) filed by Chief Peter L. Dale and Officer Robert Tewis, individually and in their official capacities, and by the City of Harahan is **GRANTED, DISMISSING** plaintiff's §1983 claims against Officer Tewis in his individual and official capacities, and against Chief Dale in his individual and official capacities; and **DENIED** insofar as plaintiff's remaining state claims against the City of Harahan.

## BACKGROUND

Plaintiff Laura Gautreaux, a court reporter, claims that defendants violated her Fourth Amendment right to be free from unreasonable seizure when she was detained briefly on a porch following a deposition in a hotly contested divorce matter. The facts as alleged by plaintiff are

recited in the court's earlier ruling and are not repeated here.[1]

Defendants City of Harahan, Chief Dale and Officer Tewis previously moved to dismiss under Rule 12(b)(6) plaintiff's Fourth Amendment claim with regard to her brief detention on the porch. The court denied defendants' motion, stating:

> Plaintiff's allegation that she was forced involuntarily to remain on the porch for fifteen minutes colors a "seizure" claim, albeit slight.[2]

The defendants did not raise qualified immunity in their motion.

Defendants are again before the court on a motion to dismiss under rule 12(b)(6), on the basis that defendants Officer Tewis and Chief Dale are entitled to qualified immunity in their individual capacities; and that the complaint fails to plead sufficient facts to establish municipal liability on the part of City of Harahan. Defendants also urge that upon dismissal of the federal claims, the court decline to exercise jurisdiction over the remaining pendent state claims.

## ANALYSIS

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (*quoting Bell Atlantic v. Twombly*, 127

---

[1] *See* Doc. #14.

[2] Doc. #14. The court dismissed plaintiff's Fourth Amendment claim that she was a victim of "accumulated seizure" because she was required to appear in municipal court to answer charges. *See Nesmith v. Taylor*, 715 F.2d 194 (5th Cir. 1983). *See* Doc. #14.

2

S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

**2. Section 1983 claims**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. "The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official capacity for the municipality." *Turner v. Houma Mun. Fire and Police Civ. Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).

*a. Individual Capacity Claims*

Plaintiff's §1983 claim against Officer Tewis and Chief Dale in their individual capacities are subject to the affirmative defense of qualified immunity. 42 U.S.C. §1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "A qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Atteberry v. Nocona Gen'l Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)(citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The immunity inquiry is intended to reflect the understanding that 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" *Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009)(citation omitted). "A mistake reasonably made as to probable cause justifies qualified immunity." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008).

3

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, LLC v. Hilton*, ___ F3d. ___, 2006 WL 6245546 at *5 (5th Cir. May 9, 2009)(*citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*)). "To discharge this burden [upon a motion to dismiss,] a plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry*, 430 F.3d at 253; *see also Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). In the qualified immunity context, the objective reasonableness of an officer's belief that his conduct was lawful is a question of law, not fact. *See Attenberry,* 430 F.3d at 256.

In an earlier ruling, the court concluded that plaintiff's allegation that she was forced involuntarily to remain on the porch for fifteen minutes colors a "seizure" claim under the Fourth Amendment, albeit slight. Thus, the first prong has been met.

As to the second prong, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness'" on a motion to dismiss. *McClendon,* 305 F.3d at 323 (emphasis in original and *quoting Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Plaintiff's detailed complaint alleges that immediately prior to Officer Tewis' arrival, plaintiff had been the court reporter in a two-hour deposition "under tense conditions," and that "the conditions continued to deteriorate, due to Magistrate Gardner's actions... ." Plaintiff alleges that at some point, Gardner, who is also a defendant in this action, declared the deposition over, and contacted the Harahan Police Department, "claiming that there were people who would not leave his

4

office." According to plaintiff, when Officer Tewis arrived, plaintiff's stenographic machine had been unplugged and as she attempted to plug it in again, "Gardner grabbed the cord out of her hands." The situation escalated. Plaintiff alleges that in Officer Tewis' presence, plaintiff attempted to plug in her machine again, and Gardner pushed plaintiff again. According to plaintiff, as Bernadette Lee, the lawyer who hired plaintiff, explained to Officer Tewis that Gardner had no authority to terminate a deposition without cause, "Lee heard a disturbance and observed Officer Tewis lunge around and begin to handcuff Ms. Gautreaux." Plaintiff was not handcuffed. Plaintiff further alleges:

> Officer Tewis then asked Ms. Lee and Ms. Gautreaux for their driver licenses and instructed them to wait outside the law office on the porch. Officer Tewis remained in the law office for approximately fifteen (15 minutes) with Magistrate Gardner. When Officer Tewis exited, he approached both Ms. Gautreaux and Ms. Lee and asked them what they were doing on the porch. After being advised that he told them to wait there [,] Officer Tewis told them to get off the porch at which point a detective arrived.[3]

The events alleged by plaintiff in her detailed complaint establish that Officer Tewis arrived onto a quickly escalating tense situation in a private law office, and was told that by the lawyer in the office that plaintiff and Lee would not leave his office. Officer Tewis then witnessed a scuffle between plaintiff and Gardner who pushed plaintiff. In an apparent effort to de-escalate the situation, Officer Tewis then separated plaintiff from the scene and asked that she wait on the outside porch while he spoke to Gardner. Scrutinizing defendant's conduct as alleged in the complaint, the court concludes that Officer Tewis' actions were objectively reasonable. Upon a motion to dismiss,

---

[3]Doc. #1, ¶XXIV.

5

plaintiff must allege facts that demonstrate that Officer Tewis' actions were objectively unreasonable and plaintiff's complaint fails to do so. *See Club Retro*, 2006 WL 6245546 at *16; *Terry v. Ohio*, 392 U.S. 1, 29 (1968). As a result, Officer Tewis is entitled to qualified immunity, and plaintiff's individual claims against him are dismissed.

Plaintiff's complaint does not contain allegations against Chief Dale in his individual capacity. Plaintiff does not allege that Chief Dale was on the scene, or that he was directing Officer Tewis' actions. Section 1983 does not impose individual liability on a supervisor under theories of vicarious liability or *respondeat superior*. *Kohler v. Englade*, 470 F3d 1104, 1114-15 (5th Cir. 2006). Only direct acts or omissions of government officials will give rise to individual liability under §1983. *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Because plaintiff's complaint has not alleged facts to support a claim for individual liability against Chief Dale, the individual claims against Chief Dale are dismissed.

### 3. Official Capacity Claims

Unlike suits against officials in their individual capacities, municipal entities do not enjoy qualified immunity from suit. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). A suit against Chief Dale in his official capacity is in essence a suit against the City of Harahan. *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)(*citing Monell*, 98 S.Ct. at 2035 n. 55). A municipality cannot be held liable under a theory of *respondeat superior*; rather, liability must be based upon a municipality's official or unofficial policy, custom or procedure which cause a deprivation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 691.

A municipality's failure to train its officers can give rise to §1983 liability. *Brumfield v. Hollins*, 551 F.3d 322, 332 (5th Cir. 2008). To succeed on a claim of failure to train or supervise, plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Gates v. Texas Dept. of Protective and Rel Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). As to the third prong, the Fifth Circuit has held that deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005). "[D]eliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

The only official capacity claim alleged by plaintiff is against Chief Dale, and states as follows:

> Chief Dale's failure to train HPD officers to refrain [from] making arrest to accommodate Magistrate Gardner together with Officer Tewis' inadequate training and experience to perform his duties as an HPD Officer are indicative of a policy or deliver [sic] indifference to citizens' civil rights by the HPD resulting in the deprivation of Ms. Gautreaux's civil rights as well as those of others living in Harahan.[4]

Plaintiff's complaint alleges that Chief's Dale's failed to train his officers "to refrain [from] making arrest to accommodate Magistrate Gardner" was a policy. Plaintiff alleges no facts to support that the failure to train in this regard was an ongoing, widespread or persistent practice, or

---

[4]Doc. 1, ¶XXXI.

to support deliberate indifference.

Official capacity claims are not subject to heightened pleading requirements, and must satisfy "notice pleading" requirements under Fed. R. Civ. Proc. 8(a)(2). *Bennett v. Pippin*, 74 F.3d 578, 782 (5th Cir. 1996). *See also Leatherman*, 507 U.S. at 163. While a complaint does not need detailed factual allegations to survive a motion to dismiss, factual allegations must support that a right to relief is neither speculative nor merely a conclusion. *Twombly*, 127 S.Ct. at 1964-65. Plaintiff's conclusory allegation is insufficient to color a claim against Chief Dale in his official capacity. Thus, the motion to dismiss Chief Dale in his official capacity is granted.

While plaintiff names Officer Tewis in his official capacity, plaintiff alleges no facts to support an official capacity claim against Officer Tewis. Plaintiff does not allege that Officer Tewis is a supervisor or a policy maker. To be liable in one's official capacity under §1983, the defendant must have been delegated policy making authority under state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). As plaintiff has not alleged that Officer Tewis has policy making authority, she has not stated a claim against Officer Tewis in his official capacity. Plaintiff's claim against Officer Tewis in his official capacity is dismissed.

**4. State Claims**

Defendants seek dismissal of plaintiff's state law claims. When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). Because plaintiff's federal claim against defendant Gardner in his official and individual capacities remain, defendants' motion to dismiss plaintiff's state claims against the City of Harahan is denied.

Accordingly, defendants' motion to dismiss is **GRANTED**, **DISMISSING** plaintiff's claims against Officer Tewis in his individual and official capacities, and plaintiff's claim against Chief Dale in his individual and official capacities; and **DENIED** insofar as plaintiff's remaining state claims against the City of Harahan.

New Orleans, Louisiana, this  2nd  day of July, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**